**UNITED STATES DISTRICT COURT
DISTRICT OF NEW HAMPSHIRE**

<u>Yin Gui Chen</u>

      v.                                Case No. 14-cv-114-AJ
                                               Opinion No. 2016 DNH 060

<u>C & R Rock Inc., et al.</u>

**O R D E R**

The plaintiff Ying Gui Chen, proceeding pro se, has brought suit against C&R Rock, Inc. ("C&R Rock"), Johnny Zeng, Mark Zeng, and Jin Huang (collectively "defendants") alleging they violated the Fair Labor Standards Act of 1938 ("FLSA"), 29 U.S.C. § 201 et seq., and New Hampshire Revised Statutes Annotated ("RSA") §§ 275, 279, when they failed to compensate him for all hours worked and overtime wages.

The court held a one-day bench trial on February 24, 2016. Chen testified on his own behalf.[1]  Huang testified for the defendants.  After considering the trial testimony and the record evidence, the court concludes that C&R Rock and Huang are liable to Chen for violations of the FLSA and RSA in the amount of $16,930.76.  Pursuant to Federal Rule of Civil Procedure

---

[1] Chen does not speak English.  A certified Mandarin interpreter, appointed by the court and paid for by the plaintiff pursuant to Federal Rule of Civil Procedure 43(d), was present during all phases of trial.

52(a), the court's findings of fact and rulings of law are set
forth below.

### Findings of Facts

C&R Rock, a corporation based in New Hampshire, does
business as a restaurant under the name Peking Tokyo of Lebanon
("Restaurant").  Tr. 50:5-18; Defs.' Ex. B, doc. no. 88.  On
average, the Restaurant's sales total between $70,000 and
$80,000 each month.  Tr. 93:4-10.

Jin Huang is the sole owner of C&R Rock.  Id.; Defs.' Ex.
A.  Johnny Zeng, Huang's husband, works for C&R Rock as an
assistant manager.  Tr. 49:6-9, 60:9-15.  Mark Zeng, Johnny
Zeng's uncle, has never been an owner, director, or employee of
C&R Rock.  Tr. 55:17-56:12, 56:20-21.

Huang testified that her responsibilities at the Restaurant
include creating the employees' schedules, managing orders, and
preparing payroll.  Tr. 60:16-24.  Huang testified that she
understood "labor law" and employees would speak with her if
they "had any issues."  Tr. 61:5-9, 91:19-23.  Huang testified
that she and her husband, Johnny Zeng, preform "prep work" for
the Restaurant at night after it has closed or before it opens
in the morning.  Tr. 97:15-24.

The plaintiff, Ying Gui Chen, began working at the
Restaurant on September 28, 2009.  Tr. 69:2-8; Defs.' Ex. D.  On

October 2, 2009, Chen and Huang signed an employment agreement. Defs.' Ex. H.  The agreement stated that Chen would be paid $8.00 an hour as a cook for 20 to 40 hours of work per week. Id.  The agreement also stated that Chen, as an employee, had "the duty to report any wage statement errors to the Employer within two (2) weeks of the affected wage statement (including wrong regular working hour, overtime, overtime pay and pay rate), otherwise the right to dispute is waived."  Id.[2]

Although Chen's employment agreement stated that he would be paid $8.00 an hour, he was paid $7.50 from September 28, 2009, to November 29, 2009.  Defs.' Ex. E, at 1-5.  Huang explained that Chen's pay of $7.50 was "the training rate."  Tr. 75:2-14.  Beginning on November 30, Chen pay was increased to $8.00 an hour.  Defs.' Ex. I, at 5.

Chen stopped working at the Restaurant in June 2010.  Tr. 68:18-2; Defs.' Ex. D.  Soon after, Chen moved to St. Louis, Missouri to work at another restaurant.  Tr. 23:6-24:18.  Chen returned to work at the defendants' Restaurant on January 23, 2012.  Tr. 76:17-24.  There is no evidence of an employment agreement during this second period of employment.  Chen worked

---

[2] Chen and Huang also signed a Chinese version of the employment agreement.  Defs.' Ex. I.  The English employment agreement, however, contains a clause that states "[i]f there is a dissimilarity between Chinese and English interpretation, [parties should] accord[] to the English version."  Defs.' Ex. H.

at the Restaurant until the first week of May 2013.  Tr. 9:10-13, 87:7-10.

At trial, Chen testified that he worked 67 hours each week while employed by the Restaurant.  Tr. 10:7-9, 19:11.  The chart below summarizes the hours Chen stated he worked at the Restaurant each week:

| Monday | Tuesday | Wednesday | Thursday | Friday | Saturday | Sunday |
|--------|---------|-----------|----------|--------|----------|--------|
| 10:30 a.m. – 9:30 p.m. | Off | 10:30 a.m. – 9:30 p.m. | 10:30 a.m. – 9:30 p.m. | 10:30 a.m. – 10:30 p.m. | 10:30 a.m. – 10:30 p.m. | 11:30 a.m. – 9:30 p.m. |

Tr. 9:20-24, 20:15-20.

The alleged hours worked by Chen mirror the hours the restaurant was open; the only difference being that Chen testified that he started working 30 minutes before the restaurant opened in order to complete food preparation.[3]  Tr. 33:8-12.  Chen never testified that he performed any work after the Restaurant was closed for the night.

During trial, the defendants presented pay stubs (Defendants' Exhibits E and G) and work schedules (Defendants'

---

[3] During trial, the defendants stipulated that, from July 2009 to June 2010, the Restaurant's operating hours were the following: Monday – Thursday, 11:00 a.m. – 9:30 p.m.; Friday – Saturday, 11:00 a.m. – 10:30 p.m.; Sunday – 12:00 p.m. – 9:30 p.m.  Tr. 31:20-32:19.  No evidence was presented as to whether the Restaurant's hours were the same during the period Chen worked at the Restaurant from January 2012 to May 2013.

Exhibits D and F) to refute Chen's claim of hours worked.  The
pay stubs note how many hours Chen worked each week and match
the hours Chen was scheduled to work in a particular week.
Defs.' Ex. D, E, F, and G.  Most weeks, the Restaurant's
generated work schedule shows that Chen was scheduled to work
either 32 or 40 hours.  Id.  According to these schedules, Chen
was never scheduled to work before or after the Restaurant was
open.  Defs.' Ex. D and F.

Most, if not all, of Chen's scheduled work days at the
Restaurant were set into two shifts, with Chen scheduled to work
3 to 4 hours, followed by at least a 90 minute break, and then
returning to work another 4 to 5 hours.  Defs.' Ex. D and F.
During trial, the court asked Huang what Chen normally did
during the extended break in his schedule.  Huang answered that
Chen would take a walk or go back and rest in a dormitory
located across the street from the Restaurant.  Tr. 98:8-18.[4]
Huang also testified that, during Chen's entire employment at
the Restaurant, he was never required to work beyond the
designated hours set in his work schedule.  Tr. 98:19-22.

The court also asked Huang if the Restaurant had any
records that showed the actual hours an employee worked, in

---

[4] There is no evidence in the record that Huang's testimony as to
what Chen normally did between his scheduled shifts was based on
her personal observations.

place of the schedule generated before an employee's shift.  Tr.
96:5-14.  Huang answered that the Restaurant does use a computer
time card, however, she testified that "most of [the] employees
. . . don't want to use the computer . . . and like [Chen], he
[does not] know how to use the computer . . . ."  Tr. 96:15-22.

## Rulings of Law

### I.   Liability under the FLSA and State Law[5]

To state a valid FLSA claim, the plaintiff must show by a
preponderance of the evidence that: (1) he was employed by the
defendants; (2) his work involved interstate activity; and (3)
he performed work for which he was under-compensated.  Pruell v.
Caritas Christi, 678 F.3d 10, 12 (1st Cir. 2012).

As to the first element, it is uncontested that the

---

[5] In addition to state and federal wage and overtime claims, the
plaintiff's amended complaint includes claims for unjust
enrichment and violations of the New Hampshire Consumer
Protection Act ("CPA"), RSA § 358-A.  Am. Compl. ¶¶ 63-72, doc.
no. 40.  The plaintiff never addressed these claims at trial.
Regardless, these claims are inapplicable to this case.  First,
"state claims that duplicate FLSA claims are preempted."  Cosman
v. Simon Roofing & Sheet Metal Corp., No. CIV.A. 12-11537-DJC,
2013 WL 2247498, at *2 (D. Mass. May 17, 2013).  Here, the
plaintiff's unjust enrichment claim simply duplicates other
allegations found in the complaint.  Second, state consumer
protection acts do "not normally extend to run-of-the-mill
employment disputes."  Anderson v. Sara Lee Corp., 508 F.3d 181,
190 (4th Cir. 2007) (quotation marks omitted).  In this case,
the plaintiff has failed to demonstrate any extraordinary
circumstances that would allow RSA § 358-A to apply to his wage
and overtime claims.

plaintiff, for some period of time, was employed by C&R Rock. The parties disagree, however, as to the second and third elements of the plaintiff's FLSA claim.

A.   Interstate Activity

To satisfy the second element of his FLSA claim, the plaintiff must demonstrate that his work at the Restaurant involved interstate activity.  Pruell, 678 F.3d at 12.  This may be shown by proving that the employer

> (i) has employees engaged in commerce or in the production of goods for commerce, or . . . has employees handling, selling, or otherwise working on goods or materials that have been moved in or produced for commerce by any person; and (ii) is an enterprise whose annual gross volume ["AGV"] of sales made or business done is not less than $500,000 . . . .

Martinez v. Petrenko, 792 F.3d 173, 175 (1st Cir. 2015) (quoting 29 U.S.C. § 203(s)(1)(A)).

"A restaurant with over $500,000 in annual sales satisfies this statutory definition." Cordova v. D & D Rest., Inc., No. 14 CIV. 8789 CS LMS, 2015 WL 6681099, at *3 (S.D.N.Y. Oct. 29, 2015); see also Fermin v. Las Delicias Peruanas Rest., Inc., 93 F. Supp. 3d 19, 33 (E.D.N.Y. 2015) (finding that "it is reasonable to infer that the myriad goods necessary to operate a . . . restaurant with an eat-in dining area and over $500,000.00 in annual sales do not exclusively come from [instate].  As a restaurant, it is reasonable to infer that [it] requires a wide variety of materials to operate, for example, foodstuffs,

7

kitchen utensils, cooking vessels, cleaning supplies, paper products, furniture, and more.  It is also reasonable to infer that some of these materials moved or were produced in interstate commerce.").

Here, it is uncontested that defendant C&R Rock owns the Restaurant.  Further, Huang, the owner of C&R Rock, testified that the restaurant averages between $70,000 and $80,000 in sales every month.  Therefore, because the plaintiff has shown that the restaurant averages over $500,000 in annual sales, he has satisfied the second element of his FLSA claim.

   B.   Evidence of Inadequate Compensation

Employees covered under the FLSA are currently guaranteed a minimum wage of $7.25 for each hour worked.  29 U.S.C. § 206(a). When an employee works beyond 40 hours in one week, the FLSA requires that he or she be compensated "at a rate not less than one and one-half times the regular rate at which he is employed."  29 U.S.C. § 207.  New Hampshire law mirrors the federal wage and overtime requirements.  See RSA § 279:21.

Although a plaintiff normally "has the burden of proving that he performed work for which he was not properly compensated," when an employer has "inaccurate or inadequate" records, the plaintiff "has carried out his burden if he proves that he has in fact performed work for which he was improperly compensated and if he produces sufficient evidence to show the

amount and extent of that work as a matter of just and reasonable inference." Anderson v. Mt. Clemens Pottery Co., 328 U.S. 680, 687 (1946). In this scenario, the plaintiff's burden is minimal. Sec'y of Labor v. DeSisto, 929 F.2d 789, 792 (1st Cir. 1991). Indeed, "[s]ufficient evidence may be established by recollection alone." Solis v. SCA Rest. Corp., 938 F. Supp. 2d 380, 394 (E.D.N.Y. 2013) (quotation marks omitted). If the plaintiff succeeds on satisfying his minimal burden,

> [t]he burden then shifts to the employer to come forward with evidence of the precise amount of work performed or with evidence to negative the reasonableness of the inference to be drawn from the employee's evidence. If the employer fails to produce such evidence, the court may then award damages to the employee, even though the result be only approximate.

Mt. Clemens, 328 U.S. at 687–88.

In this case, the evidence shows that C&R Rock's records are inadequate. The FLSA requires an employer to "make, keep, and preserve such records of the persons employed by him and of the wages, hours, and other conditions and practices of employment maintained by him . . . ." 29 U.S.C. § 211(c). Required records include "[h]ours worked each workday and total hours worked each workweek . . . ." 29 C.F.R. § 516.2(a)(7).

As discussed in the court's findings of fact, the defendants submitted pay stubs and employer generated schedules at trial to demonstrate its maintenance of employee hours worked. Prospective work schedules, however, are not a

sufficient record of actual hours worked.  See McComb v. La Casa Del Transporte, 167 F.2d 209, 210 (1st Cir. 1948) (holding that an employer that did not keep records of "actual time," but "recorded merely the 'average hours' . . . as set forth in the published schedule" failed to show actual hours worked each day and hours worked each week); see also U.S. Dep't of Labor v. Cole Enterprises, Inc., 62 F.3d 775, 779 (6th Cir. 1995) (finding that shift schedules were not evidence of actual hours worked).

Further, Huang testified at trial that the Restaurant did not have time cards for the plaintiff – evidence that may have demonstrated actual hours the plaintiff worked – because she contends the plaintiff did not know how to use the computer system.  In addition, the pay stubs submitted as exhibits by the defendants offer little support because they align perfectly with the work schedules created by the employer prior to the plaintiff's actual shift.  Consequently, the pay stubs also fail to demonstrate actual hours worked.

Because C&R Rock's employee records are inadequate, Chen has the minimal burden to show "sufficient evidence" of the length of his employment and the hours he worked each day.  See Mt. Clemens, 328 U.S. at 687-88.  Chen has satisfied this burden by providing sworn testimony concerning the general dates of his employment and the estimated hours he worked each day for the

Restaurant.

Chen's testimony, however, is only partially credible. Chen's testimony is credible to the extent of the hours he worked each day, with the exception of time Chen testified that he participated in "preparation work" before the Restaurant was scheduled to open.  The court finds Huang's testimony that she and her husband performed food preparation work before and after the Restaurant was open to be credible.  Huang's testimony demonstrated that she had personal knowledge of who performed preparation work before the Restaurant opened.

The court finds that the defendants failed to rebut Chen's testimony that he worked throughout the entire day, contrary to the gaps between shifts typically indicated on the employer provided work schedule.  As stated previously, the defendants have provided no time cards, credible testimony of personal knowledge, or any other evidence that rebuts Chen's testimony as to these hours.  Further, the court finds that Huang's testimony as to what Chen did between his shifts speculative.

Although the Restaurant's work schedules are not evidence of actual hours worked, the court finds that they are evidence of actual days worked.  Therefore, the court finds the schedules submitted by the defendants credible as to actual days, but not actual times, Chen worked at the Restaurant.

In conclusion, the defendants failed to come forward with

evidence as to actual hours worked by the plaintiff.  What little evidence they submitted largely failed to satisfy an employer's requirements under the FLSA.  Thus, the mostly credible testimony of the plaintiff is weighed heavily by the court.  The purpose of this burden shifting framework is clear: "Where the employer has failed to keep adequate employment records, it pays for that failure at trial by bearing the lion's share of the burden of proof."  DeSisto, 929 F.2d at 792.  At trial, an employer cannot "capitaliz[e] on its failure to maintain records."  O'Brien v. Town of Agawam, 482 F. Supp. 2d 115, 119 (D. Mass. 2007).[6]

The court therefore credits the plaintiff's account of the number of hours he worked, with the exception of any alleged preparation time, based on the days he worked as found in the defendants' work schedules and hourly rate of pay reflected in the defendants' pay stubs.

## II.  **Statute of Limitations**

Generally, FLSA violations are subject to a two-year

---

[6] The RSA's record-keeping, overtime compensation, and minimum wage requirements are analogous to the FLSA's regulations and requirements.  See RSA §§ 275:43, 279:21, 27; 29 U.S.C. §§ 206-07, 211(c); 29 C.F.R. § 516.2(a).  As a result, the court's analysis of the burden shifting framework first established in Mt. Clemens is germane to the plaintiff's wage and overtime claims under New Hampshire law.  Therefore, the defendants are liable to the plaintiff under his state wage claims for the same reasons as under the FLSA.

statute of limitations.  29 U.S.C. § 255(a).  However, "a cause of action arising out of a willful violation may be commenced within three years after the cause of action occurred."  Id. (emphasis added).

An employer's violation is willful if "the employer either knew or showed reckless disregard for the matter of whether its conduct was prohibited by the [FLSA] . . . ."  McLaughlin v. Richland Shoe Co., 486 U.S. 128, 133 (1988).  "[T]he First Circuit has recognized two separate, yet interdependent, components implicit in the [willful violation] standard."  Acosta Colon v. Wyeth Pharm. Co., 363 F. Supp. 2d 24, 28 (D.P.R. 2005) amended on reconsideration in part No. CIV. 03-2327 DRD, 2006 WL 508094 (D.P.R. Mar. 1, 2006).  First, "a plaintiff in such a case must proffer evidence that . . . the defendant employer had actual knowledge of, or showed reckless disregard for, that required under the [FLSA], and, secondly, the employer intentionally disobeyed or ignored the law."  Id.; see also Haro v. City of Los Angeles, 745 F.3d 1249, 1258 (9th Cir.) ("An employer who knows of a risk that its conduct is contrary to law, yet disregards that risk, acts willfully.").

Here, the defendant's conduct was willful, therefore the plaintiff is entitled to a three-year statute of limitations. As stated in court's findings of fact, Huang testified that she understood labor law.  Moreover, during trial, the defendants

attempted to present evidence of their compliance with state and federal law by introducing a poster (admitted as defendants' exhibit C) that hangs near the Restaurant's kitchen which informs employees of their rights under the law.[7]  This evidence supports that the defendants had actual knowledge of the requirements espoused under the FLSA and state law.

Just as this evidence supports that the defendants had knowledge of the applicable law, other evidence supports that they willfully disregarded it.  First, as stated previously, the defendants failed to maintain adequate employee records pursuant to 29 U.S.C. § 211(c), a strong indication of willfulness.  See Xuan v. Joo Yeon Corp., No. 1:12-CV-00032, 2015 WL 8483300, at *5 (D.N. Mar. Is. Dec. 9, 2015) ("[The business manager] stated that he believed he was paying [the plaintiff] more than what the law required, but nevertheless failed to track hers or any other employee's hours. In other words, [the business manager], understanding the requirements of the FLSA and the risk of noncompliance, determined to proceed as if the risk did not exist at all — the very definition of willful.")

Second, the plaintiff's employment agreement with the Restaurant states that the plaintiff must "report any wage statement errors to the Employer within two (2) weeks of the

---

[7] The poster is written in English.

14

affected wage statement . . . otherwise the right to dispute [the wages] is waived." Defs.' Ex. H. This type of agreed waiver of earned wages is a violation of state and federal law, and a clear demonstration of willfulness. See RSA § 275:50; Brooklyn Sav. Bank v. O'Neil, 324 U.S. 697, 704-07 (1945) ("No one can doubt but that to allow waiver of statutory wages by agreement would nullify the purposes of the [FLSA].").

Third, the evidence shows that the defendants violated Chen's employment contract by undercompensating him for the first two months of his employment, another demonstration of willfulness. On October 2, 2009, Chen and Huang signed an employment agreement stating that Chen would be paid $8.00 an hour.[8] However, from September 28, 2009 to November 29, 2009, Chen was only paid $7.50 an hour. At trial, Huang contended that Chen's $7.50 wage was "the training rate" and she had "talked about that" with him. Yet, there is no evidence in the record that that Huang and Chen had any agreement that Chen be paid $7.50 an hour, instead of $8.00 an hour as stated in the employment agreement, for the first two months of his employment at the Restaurant.

---

[8] This employment agreement was signed four days after the defendant began working for the Restaurant. Defs.' Ex. D. Under New Hampshire law, employees must be notified of their rate of pay at the time of hiring. RSA § 275:49.

Therefore, because of the defendants' willful violations, the statute of limitations is extended to July 24, 2010, exactly three years before the plaintiff filed his claim in federal court.[9]  See doc. no. 1.

## III. **Individual Liability**

In addition to Defendant C&R Rock, the plaintiff also has claims against defendants Johnny Zeng, Mark Zeng, and Jin Huang in their individual capacities.  Am. Compl. ¶¶ 17-19.

Under the FLSA, "liability attaches to any 'employer,' which is defined broadly to include 'any person acting directly or indirectly in the interest of an employer in relation to an employee.'"  Manning v. Boston Med. Ctr. Corp., 725 F.3d 34, 47 (1st Cir. 2013) (citing 29 U.S.C. § 203(d)).  "In determining employer status, 'economic reality' prevails over technical common law concepts of agency."  Donovan v. Agnew, 712 F.2d 1509, 1510 (1st Cir. 1983) (citing Goldberg v. Whitaker, 366 U.S. 28, 33 (1961)).

---

[9] Similarly, the statute of limitations for the plaintiff's state wage claims is three years.  See RSA §§ 508:4, 275:53, 279:29; Scacchi v. Dycom Indus., Inc., 297 F. Supp. 2d 406, 408 (D.N.H. 2004) (finding that the three-year limitation period provided by RSA § 508:4 applied to the plaintiff's wage claim).  The plaintiff did not raise claims under New Hampshire wage law until the filing of his amended complaint on January 26, 2015. Am. Compl. ¶¶ 57-62.  As such, because the plaintiff's claims under federal law were filed earlier, any damages entitled to the plaintiff will be already covered by his federal claims.

"While recognizing the fact-based nature of this test . . . courts should not apply the analysis in a manner that would 'make any supervisory employee, even those without any control over the corporation's payroll, personally liable for the unpaid or deficient wages of other employees.'" Manning, 725 F.3d at 47 (quoting Donovan, 712 F.2d at 1513).  Instead, the

> analysis focuse[s] on the role played by the corporate officers in causing the corporation to undercompensate employees and to prefer the payment of other obligations and/or the retention of profits. In addition to direct evidence of such a role, other relevant indicia may exist as well—for example, an individual's operational control over significant aspects of the business and an individual's ownership interest in the business.  Such indicia, while not dispositive, are important to the analysis because they suggest that an individual controls a corporation's financial affairs and can cause the corporation to compensate (or not to compensate) employees in accordance with the FLSA.

Baystate Alternative Staffing, Inc. v. Herman, 163 F.3d 668, 678 (1st Cir. 1998) (internal citation omitted).

Likewise, under New Hampshire law, a defendant may be individually liable if an officer of a corporation "knowingly permitted" the corporation to violate the state's wage provisions.  Richmond v. Hutchinson, 829 A.2d 1075, 1078 (N.H. 2003).  The factors to consider are similar to the considerations made when determining individual liability under the FLSA.  See id.

In this case, the evidence reveals that neither Johnny Zeng nor Mark Zeng were involved in the incorporation of C&R Rock. No evidence was presented to show that Johnny Zeng or Mark Zeng were corporate officers of C&R Rock or possessed any corporate control of C&R Rock during the relevant time.  Therefore, the plaintiff has failed to satisfy his claims against Johnny Zeng or Mark Zeng in their individual capacities.

The plaintiff has, however, demonstrated that Huang may be jointly and severally liable under the FLSA.  Trial testimony concluded that Huang is the sole owner of C&R Rock, "a significant factor in the individual liability analysis." Manning, 725 F.3d at 48.  Further, Huang testified that she was involved in scheduling employees and preparing payroll at the restaurant.  Huang's status as owner and controller of the restaurant's scheduling and payroll clearly demonstrates that she is a corporate officer with operational control of C&R Rock and is thus an "employer" pursuant to the FLSA.

Therefore, as joint employers, Defendants C&R Rock and Huang may be jointly and severally liable for the plaintiff's wage and overtime claims.

## IV.  **Liquidated Damages**

Both the FLSA and New Hampshire law permit a plaintiff to recover liquidated damages in an amount equal to his unpaid wages.  29 U.S.C. § 216(b); RSA § 275:44, IV.

Under the FLSA, any employer who violates its wage provisions "<u>shall</u> be liable to the employee . . . in the amount of their unpaid minimum wages, or their unpaid overtime compensation . . . an addition equal amount as liquidated damages." 29 U.S.C. § 216(b) (emphasis added).

The court may exercise discretion in awarding liquidated damages "if the employer shows . . . that the act of omission giving rise to such action was in good faith and that he had reasonable grounds for believing that his act or omission was not a violation of the [FLSA]." 29 U.S.C. § 260. "To demonstrate good faith, the employer must adduce substantial evidence showing an honest attempt to determine the requirements of the FLSA and to comply with them." <u>Herman v. Hogar Praderas de Amor, Inc.</u>, 130 F. Supp. 2d 257, 267 (D.P.R. 2001). Yet, a showing that the employer "did not purposefully violate the provisions of the FLSA is not sufficient to establish that it acted in good faith." <u>Reich v. S. New England Telecommunications Corp.</u>, 121 F.3d 58, 71 (2d Cir. 1997).

In this case, because the defendants' willfully violated federal and state wage and hour law, the plaintiff is entitled to liquidated damages. See <u>Chao v. Hotel Oasis, Inc.</u>, 493 F.3d 26, 35 (1st Cir. 2007) (finding that a district court's conclusion that a corporation willfully violated the FLSA "adequately support[ed]" its decision to award liquidated

damages).  As stated previously, the court concludes that the
remaining defendants' violations were willful because they
failed to maintain adequate employment records, attempted to
contract a waiver of any potential wage claims, and for two
months failed to pay the plaintiff the hourly rate specified in
his 2009 employment contract.  The defendants have presented no
"plain and substantial evidence to meet the good faith and
reasonableness standards" to show that they believed their acts
did not violate the FLSA.  Blake v. CMB Const., No. CIV. 90-388-
M, 1993 WL 840278, at *7 (D.N.H. Mar. 30, 1993).

Accordingly, the defendants are liable for liquidated
damages to be "assessed in an amount equal to the uncompensated
. . . wages found to be due to [the] plaintiff."  Id.

## VI.  Calculation of Damages

For the reasons stated above, "the court may . . . award
damages to the employee, even though the result be only
approximate."  Mt. Clemens, 328 U.S. at 688.  As explained
previously, in calculating damages owed to the plaintiff, the
court credits the plaintiff's account of the number of hours he
worked, with the exception of any alleged preparation time,
based on the days he worked as found in the defendants' work
schedules and hourly rate of pay reflected in the defendants'
pay stubs.  Defs.' Ex. F, G.  Pursuant to 29 U.S.C. § 255(a),
the plaintiff's damages may only reach back to July 24, 2010.

The court's calculations are below:

A.   <u>Straight-time compensation owed to the plaintiff</u>:

- From the period of January 23, 2012, to November 4, 2012 (when the plaintiff was paid $8.50 an hour):
  - Unpaid hours (245) x Wage ($8.50) = $2,082.50

- From the period of November 5, 2012, to May 5, 2013 (when the plaintiff was paid $9.00 an hour):
  - Unpaid hours (5) x Wage ($9.0) = $45.00

B.   <u>Overtime compensation owed to the plaintiff</u>:

- From the period of January 23, 2012, to November 4, 2012 (when the plaintiff was paid $8.50 an hour):
  - Unpaid hours (189.5) x Overtime Wage ($12.75) = $2,416.13.

- From the period of November 5, 2012, to May 5, 2013 (when the plaintiff was paid $9.00 an hour):
  - Unpaid hours (290.5) x Overtime Wage ($13.50) = $3,921.75

C.   <u>Final Damages</u>

- Straight-time owed: $2,082.50 + $45.00 = $2,127.50

- Overtime owed: $2,416.13 + 3,921.75 = $6,337.88

- Liquidated damages: $8,465.38

- TOTAL: $16,930.76

## **Judgment**

For the foregoing reasons, the court concludes that the plaintiff has proved, by a preponderance of the evidence, that defendants C&R Rock, Inc. and Jin Huang violated the FLSA and RSA by failing to pay him appropriate straight-time and overtime wages.  Accordingly, the court awards the plaintiff damages

totaling $16,930.76, for which defendants C&R Rock, Inc. and Jin Huang are jointly and severally liable.

The court also concludes that the plaintiff has failed to prove that defendants Johnny Zeng and Mark Zeng violated the FLSA and New Hampshire wage and hour law.  Therefore, the plaintiff is not entitled to any damages from these defendants.

The FLSA provides for the defendants to pay a successful plaintiff's reasonable costs.  29 U.S.C § 216(b).  The plaintiff shall submit an affidavit and accounting of itemized costs and attorney's fees by April 5, 2016.  The court notes that the plaintiff prepaid $1,254.00 to the Clerk of Court for an interpreter during trial.  On March 17, 2016, the court approved payment of the interpreters' submitted invoices and ordered the remaining balance of monies prepaid by the plaintiff to be reimbursed to him.  As stated in an order dated February 4, 2016, the plaintiff may recover the actual cost of interpreter services, which, after partial reimbursement, totals $858.23. Doc. no. 82 at 5.  The defendants shall submit any opposition to costs within fourteen (14) days of the filing of the plaintiff's application.

Before trial, the court invited the parties to submit requests for findings of fact and conclusions of law before the presentation of evidence.  Doc. no. 86.  Neither party submitted memoranda before trial.  After trial, the court offered the

parties the opportunity to file post-trial memoranda.  Doc. no. 87.  The pro se plaintiff filed proposed findings of fact and conclusions of law.  Doc. no. 91.  The defendants filed a motion to strike the plaintiff's proposed findings and conclusions (doc. no. 92) and its own post-trial memorandum.  Doc. no. 93.

In its motion to strike, the defendants contend that the pro se plaintiff's filing should be stricken because it does not contain separately numbered paragraphs, a violation of Local Rule 16.2(b)(2).  The motion (doc. no. 92) is denied.

Any findings of fact or conclusions of law found in the parties post-trial memoranda (doc. nos. 91 & 93) consistent with this order are granted.  Accordingly, all other findings of fact or conclusions of law inconsistent with this order are denied.

SO ORDERED.

Andrea K. Johnstone
United States Magistrate Judge

March 22, 2016

cc:  Yin Gui Chen, Pro Se
     George E. Spaneas, Esq.